IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-03446-PAB

SNOWMASS MINING CO., LLC, an Idaho limited liability company,

    Plaintiff,

v.

MYSTIC EAGLE QUARRY, LLC, a Colorado limited liability company,
ELBRAM STONE COMPANY LLC, a Colorado limited liability company,
AVALANCHE CREEK MARBLE AND ALABASTER LLC, a Colorado limited liability company, and
ROBERT CONGDON,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Motion for Remand [Docket No. 20]. Defendants Mystic Eagle Quarry, LLC, ("Mystic Eagle"), Elbram Stone Company LLC, ("Elbram"), Avalanche Creek Marble and Alabaster LLC, and Robert Congdon ("Mr. Congdon") filed a response, Docket No. 22-1,[1] and plaintiff filed a reply. Docket No. 23.

## I. BACKGROUND

According to plaintiff's complaint, defendants have violated an order issued on June 8, 2017 and the final judgment entered on January 25, 2018 in Case No. 2014cv30168 in the District Court for Pitkin County, Colorado (the "original lawsuit"),

---

[1] Defendants filed an unopposed motion to correct their response to plaintiff's motion based upon a failure to follow the Court's practice standards in their initial response. Docket No. 21 at 1-2. The Court will grant defendants' motion and accept Docket No. 22-1 as defendants' response to plaintiff's motion to remand.

which involved the same parties.  Docket No. 5 at 2, ¶ 8.  The original lawsuit sought to quiet title to mining claims, including the claims relevant to this case (the "White Banks Claims") located on national forest land in Pitkin County, Colorado in favor of plaintiff. *Id.*, ¶ 10.  The state court ruled that Mr. Congdon forfeited his mining claims in 2004 and that he failed to make a valid claim on the White Banks Claims in August 2005.  *Id.* at 4-5 ¶¶ 17, 21, 25.  The court further ruled that plaintiff's claims that were "filed on August 24, 2005 are valid and are senior to those filed by Mr. Congdon and title to the White Banks Claims is quieted in Plaintiff."[2]  *Id.* at 4, ¶ 25.

In September 2020, plaintiff missed a deadline to pay annual fees to the Bureau of Land Management to maintain the White Bank Claims.  *Id.* at 5, ¶ 28.  Snowmass filed new claims at the White Banks Claims location with the Bureau of Land Management and recorded its new claims with the Pitkin County Recorder.  *Id.*  The Bureau assigned new serial numbers to the claims.  *Id.* ¶ 29.  Plaintiff alleges that defendants continue to assert ownership over the White Bank Claims based on "non-existent claims" and have trespassed onto the property covered by the claims.  *Id.* at 2-3, 6, ¶¶ 11-12, 31.

Plaintiff brings three claims: (1) for a declaratory judgment under Colo. Rev. Stat. § 13-51-106 and Colo. R. Civ. P. 57 that the original lawsuit conclusively determined the plaintiff's claims are superior to defendants' claims, (2) trespass, and (3) contempt pursuant to Colo. R. Civ. P. 107 for violating the judgment in the original lawsuit.  *Id.* at 8-10, ¶¶ 49-64.  Each of plaintiff's claims are state law claims.  *See id.*

---

[2] Mr. Congdon purported to quitclaim his interest in the White Banks Claims to Mystic Eagle in 2007.  *Id.* at 4, ¶ 16.

On December 1, 2021, plaintiff filed this action in the District Court for Pitkin County, Colorado. Docket No. 5 at 1. On December 23, 2021, Elbram removed this case to federal court alleging that this Court has federal-question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Docket No. 1 at 4. Elbram claimed that the other named defendants consented to removal. *Id.* The Notice of Removal argues that plaintiff's claims "necessarily raise federal questions that must be decided as part of Plaintiff's affirmative case and federal question jurisdiction exists as part of Plaintiff's complaint." *Id.* More specifically, the Notice of Removal asserts that plaintiff's request for declaratory relief is "presumably under the General Mining Law of 1872, 30 U.S.C. Chapter 2—the only source of law for establishing mining claims on federal land." *Id.* at 3.

On March 24, 2022, plaintiff filed a motion to remand this action to state court and for attorney's fees and costs based on defendants' improper removal, arguing that the Court does not have jurisdiction over this action. Docket No. 20. Defendants filed a response opposing plaintiff's motion, Docket No. 22-1, and plaintiff filed a reply. Docket No. 23.

## II. LEGAL STANDARD

A party may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). "Federal district courts must strictly construe their removal jurisdiction." *Envtl. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.*, 106 F. Supp. 2d

1088, 1092 (D. Colo. 2000).  "[A]ll doubts are to be resolved against removal."  *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).  Thus, the Court presumes that no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction.  *Lorentzen v. Lorentzen*, No. 09-cv-00506-PAB, 2009 WL 641299, at *1 (D. Colo. Mar. 11, 2009).

Under 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "Under the longstanding well-pleaded complaint rule . . . a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law."  *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (internal quotation marks and alteration marks omitted).  In other words, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  For removal jurisdiction, "the required federal right or immunity must be an essential element of the plaintiff's cause of action, and . . . the federal controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal."  *Fajen*, 683 F.2d at 333 (internal quotation marks omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936).

However, state law claims that raise a substantial question of federal law can create federal question jurisdiction.  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  The "substantial question" test applies when a state-law claim invokes a substantial federal question such that the state-law claim can be

considered to arise under federal law for jurisdictional purposes. *See Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 947 (10th Cir. 2014). To create "federal-question jurisdiction under the *Grable & Sons* test, a state law claim "(1) must necessarily raise a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad Inc.*, 693 F. 3d, 1195, 1209 (10th Cir. 2012). The Tenth Circuit has cautioned that "this branch of arising-under jurisdiction is a slim one." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012). It "takes more than a federal element to open the 'arising under' door" of § 1331. *Empire Healthchoice Assurance, Inc. v McVeigh*, 547 U.S. 677, 701 (2006). For instance, the "mere need to apply federal law in a state-law claim" will not "suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. Federal jurisdiction demands "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id*.

## III. ANALYSIS

### A. Substantial Question Test

Plaintiff moves to remand this case arguing that it does not present any basis for federal jurisdiction. Docket No. 20 at 1. Defendants respond that plaintiff's claims for declaratory judgment and trespass meet the substantial question test, and that the Court has supplemental jurisdiction over plaintiff's claim for contempt. Docket No. 22-1 at 4-14.

The initial pleading in state court was plaintiff's complaint.  Docket No. 5; Docket No. 13-28 at 2.  Therefore, the Court must analyze the complaint to determine whether it is based on federal law.  *See, e.g., King v. United Way of Central Carolinas, Inc.*, 2009 WL 2432699, at *3 (W.D.N.C. June 16, 2019); *Butts v. Hansen*, 650 F. Supp. 996, 998 (D. Minn. 1987); *Perimeter Lighting, Inc. v. Karlton*, 456 F. Supp. 355, 358 (N.D. Ga. 1978).

Defendants argue that plaintiff's claims require the resolution of substantial and disputed questions of federal law because plaintiff seeks a declaration that it holds title to the White Bank Claims and that determination must necessarily be made under federal law.  Docket No. 22-1 at 5.  Specifically, defendants argue that plaintiff's request that the court declare "[n]either Snowmass' inadvertent failure to pay requisite fees in 2020 nor Snowmass' re-location of the White Banks Claims in September 2020 has any effect on the 2017 Order, 2018 Order, or Original Lawsuit, nor do they create on behalf of Defendants any valid claims at the White Banks Claim location" requires the application of federal law to determine the effect of plaintiff's failure to timely pay fees.  Docket No. 22-1 at 6-7.  Defendants' theory is that defendants had junior claims to the White Banks Claims and that plaintiff's forfeiture and relocation of claims cannot supplant defendants' junior claims.  *Id.*

Plaintiff's theory is that, based on the 2018 order, defendants do not have any valid claims and that attempts by defendant after the original lawsuit to argue ownership over the White Banks Claims is in violation of the orders in the original lawsuit.  Docket No. 20 at 9-10.  Plaintiff states that the original lawsuit declared any "junior claims" by defendants to be void as a matter of law.  *Id.* at 11.  Plaintiff claims that the original

lawsuit ruled that plaintiff's claim was "senior to those filed by Mr. Congdon." Docket No. 5 at 5, ¶ 25. Plaintiff does not make any allegations that defendants have valid existing junior claims.

Defendants argue that the state court's ruling does not resolve the federal issue, namely, the validity of plaintiff's claims. Docket No. 22-1 at 3. Defendants assert that the state court has not ruled on whether plaintiff's re-filed claims have priority over defendants' rights. *Id.* at 4.

The Court agrees with defendants. The state court orders were from June 8, 2017 and January 25, 2018. Docket No. 5 at 2, ¶ 8. The plaintiff refiled its claims in September 2020. *Id.* at 5, ¶ 28. In response to defendants' assertion that the issue of validity is undecided, plaintiff says that the state court has already held that defendants have no valid interest to the White Bank Claims. Docket No. 23 at 2. Plaintiff may be correct, but that is not defendants' point. Defendants' point is that the state court will *necessarily* have to consider federal law in order to rule on plaintiff's declaratory judgment claim because, in order to find that plaintiff's claims are valid, it must apply federal law regarding the effect of missed fee payments and whether defendants had rights once plaintiff's rights were "forfeited". Docket No. 22-1 at 3-4. The Court finds that the "necessarily raised" factor of the *Grable* test has been met.

While it is true that the state court will need to consider the federal issues that defendants have identified, the "mere need to apply federal law in a state-law claim" does not "suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313. For one thing, as defendants point out, the state court has already considered the federal issue of failing to pay filing fees when it ruled on defendants' failure to pay them. *See* Docket

No. 14 at 6.  The application of federal law regarding missed fee payments is not difficult and the facts are not contested.  Moreover, whether the state court has already ruled on the validity of defendants' alleged "junior claims" is essentially a state court determination and, as plaintiff argues, may be controlled by Supreme Court precedent.  Where the state court "is competent to apply federal law, to the extent it is relevant," "fact-bound and situation-specific" claims will not "be squeezed into the slim category *Grable* exemplifies."  *Empire*, 547 U.S. at 701.  There is no strong federal interest in having the mining claims here be resolved in federal court.  The state court resolved the earlier dispute and there is no suggestion the state courts cannot do so regarding the new dispute.  *See* 30 U.S.C. § 30 (adverse claims may be heard in "a court of competent jurisdiction"); *Blackburn v. Portland Gold Mining Co.*, 175 U.S. 571, 578 (1900) ("court of competent jurisdiction" in 30 U.S.C. § 30 does not "prescribe jurisdiction in any particular court, state or Federal").  Thus, the "actually disputed" and "federal-state balance" factors of *Grable* do not weigh in favor of defendants.

The final factor, whether there is a "substantial" federal issue, weighs against defendants as well.  As defendants acknowledge, Docket No. 22-1 at 11, the Supreme Court in *Gunn v. Minton*, 568 U.S. 251, 260 (2013), noted that "[t]he substantiality inquiry under *Grable* looks [ ] to the importance of the issue to the federal system as a whole."  Defendants show no federal interest comparable to the recovery of delinquent taxes in *Grable*.  While defendants assert that a federal issue may be substantial where state adjudication would undermine the development of a uniform body of federal law, *id*. at 10 (citing *Board of Comm'rs of the SE. La. Flood Prot. Authority-East. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 859 (E.D. La. 2014), defendants cite no reason

to believe that this has been the case with state court adjudication of mining claims, *see id.*, which Congress clearly contemplated. See 30 U.S.C. § 30.

Thus, the Court finds that the state-law claims in Snowmass's complaint do not necessarily raise a disputed and substantial issue which the Court could entertain without disturbing the balance of federal-state judicial responsibilities. *Grable,* 545 U.S. at 314.

### B. Artful Pleading

Defendants argue that plaintiff's claims can be considered to create federal question jurisdiction under the doctrine of artful pleading. Docket No. 22-1 at 8-9. Under the artful pleading doctrine, a plaintiff "cannot thwart federal court jurisdiction by simply pleading only state-law claims when federal questions are essential elements of its claims." *Devon Energy Prod. Co.*, 693 F.3d at 1203 (quotations and alterations omitted). For the reasons stated above, plaintiff's claims do not necessarily implicate federal questions. This is not a case where plaintiff "seek[s] to circumvent federal jurisdiction by omitting federal issues that are essential to [its] claims." *Schmeling v. NORDAM*, 97 F.3d 1336, 1344 n.2 (10th Cir. 1996). As defendants fail to show any basis for the Court's jurisdiction over this case, the Court will grant plaintiff's motion and remand this case.

### C. Attorney's Fees and Costs

Plaintiff seeks attorney's fees and costs incurred in litigating its motion to remand. Docket No. 20 at 12. Defendants oppose the request, arguing that plaintiff cannot show the lack of an objectively reasonable basis to remove. Docket No. 22-1 at 15. The decision of whether to award costs and expenses under 28 U.S.C. § 1447(c)

lies in the discretion of the district court.  See *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1147 (10th Cir. 2004); *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 325 (10th Cir. 1994).  Such discretion, however, is guided by standards articulated by the Tenth Circuit Court of Appeals.  For example, although § 1447(c) requires "a showing that the removal was improper *ab initio*," *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997), "a plaintiff is not automatically entitled to attorney's fees simply because removal was ultimately determined to be improper."  *Martin*, 393 F.3d at 1147.  Rather, the analysis focuses on whether the removing party had a legitimate, fair, or objectively reasonable basis for removing the case.  *See Suder*, 116 F.3d at 1353; *Daleske*, 17 F.3d at 324–25; *Martin*, 393 F.3d at 1147–48.

The Court finds that defendants removed this action with an objectively reasonable basis.  "[I]f a defendant's removal could be fairly supported by the law at the time, even if later deemed incorrect, a district court's discretionary decision not to award fees is appropriate."  *Martin,* 393 F.3d at 1147.  Given the federal law that must be applied to resolve the issues in this dispute, an objectively reasonable basis exists even though the Court has ruled that fact does not satisfy the *Grable* test.  The Court will therefore decline to award plaintiff attorney's fees pursuant to 28 U.S.C. § 1447(c).

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Unopposed Motion to Amend Response to Motion to Remand [Docket No. 22] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion to Remand [Docket No. 20] is **GRANTED**.  It is further

**ORDERED** that this case shall be remanded to the District Court for Pitkin County, Colorado, where it was filed as Case No. 2021CV30118. It is further

**ORDERED** that plaintiff's request for attorney's fees and costs is **DENIED**. It is further

**ORDERED** that this case is closed.

DATED March 30, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge